UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAWN ZIMMERMAN,**

    **Plaintiff,**

  v.　　　　　　　　　　　　　　　　　Case No. 2:24-cv-1153
　　　　　　　　　　　　　　　　　　　　Judge Edmund A. Sargus, Jr.
　　　　　　　　　　　　　　　　　　　　Magistrate Judge Kimberly A. Jolson

**RUSS STEAMER SERVICE, LLC,** *et al.***,**

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendant Russ Steamer Service's ("RSS") Motion for Judgment on the Pleadings (RSS Mot., ECF No. 29) and on Defendant Target Corporation's Partial Motion for Summary Judgment (Target Mot., ECF No. 39). Plaintiff Dawn Zimmerman brings this action regarding personal injuries to her hand that she suffered while operating a truck owned by Target on Target's property. (Compl., ECF No. 2, ¶¶ 3, 5, 51–53.) She brought similar claims in a case before this Court that resulted in the Court dismissing her claims in February 2023 pursuant to her motion to dismiss. *See Zimmerman v. Russ Steamer Serv., LLC*, No. 2:22-cv-40, 2023 WL 2242118, at *2 (S.D. Ohio Feb. 27, 2023). Ms. Zimmerman brings this action again, alleging the same basic facts, but with slight changes to her allegations and her theories of recovery.

For the reasons stated in this Opinion and Order, the Court **GRANTS** RSS's Motion for Judgment on the Pleadings (ECF No. 29) and **DENIES** Target's Motion for Summary Judgment (ECF No. 39.)

## BACKGROUND

### I. Factual History

Dawn Zimmerman is a truck driver employed by RSS who worked at a distribution center operated by Target. (Compl. ¶¶ 2, 5.) RSS enters into contracts with Target to provide truck drivers like Ms. Zimmerman on Target's properties. (*Id.* ¶ 5.) On October 30, 2019, Ms. Zimmerman drove a truck owned by Target at work, moving semi-truck trailers around the property. (*Id.* ¶ 40.) She alleges that it was raining that day, causing the windows of her truck to fog up and obscure her vision. (*Id.* ¶¶ 42, 51.) She attempted to use the truck's defroster device and a cloth to keep the window clear, but it still fogged. (*Id.* ¶¶ 43, 49–51.) While operating the truck, she struck a pole in the parking lot. (*Id.* ¶ 51.) The collision of the truck's tire with the pole caused the steering wheel to spin. (*Id.* ¶ 52.) A spinner knob attached to the wheel struck Ms. Zimmerman's hand, causing injuries. (*Id.*) She received benefits from the Ohio Bureau of Workers' Compensation for her lost employment and injuries from the incident. (*Id.* ¶ 55.)

Ms. Zimmerman claims that the spinner knob posed a safety concern and that it was installed on the vehicle without written manufacturer approval in violation of federal regulations. (*Id.* ¶¶ 24–30.) She states that she complained about the spinner knob before the incident and alleges that RSS, Target, Amerit Fleet Solutions, Inc. ("AFS") and John/Jane Doe #1–25 ("Doe Defendants") (together, "Defendants") refused or failed to remove the knob. (*Id.* ¶¶ 23, 34.)

She also claims that Defendants failed to equip the truck with operable defogging or defrosting devices. (*Id.* ¶ 37.) At some point, Ms. Zimmerman alleges that a mechanic working for AFS inspected the truck and told Ms. Zimmerman that she did not know how to properly use the truck's defroster device. (*Id.* ¶¶ 45–47.)

## II. Procedural History

This action is the second lawsuit filed by Ms. Zimmerman regarding the October 30, 2019, incident. She filed her first lawsuit in the Franklin County Ohio Court of Common Pleas on October 26, 2021, naming as defendants RSS, Target, AFS, the Ohio Bureau of Workers' Compensation ("Ohio BWC"), and John/Jane Doe #1–25. (*See* Southern District of Ohio Case No. 2:22-cv-40, ECF Nos. 1, 3; complaint also attached in the present case as ECF No. 29-1.) After removal to this Court, the Court granted a motion for judgment on the pleadings filed by RSS. *Zimmerman v. Russ Steamer Serv., LLC*, No. 2:22-cv-40, 2022 WL 4357489, at *3 (S.D. Ohio Sept. 20, 2022). On February 27, 2023, the Court granted a motion for voluntary dismissal filed by Ms. Zimmerman. *Zimmerman*, 2023 WL 2242118, at *2.

On February 26, 2024, Ms. Zimmerman brought this action in the Franklin County Ohio Court of Common Pleas, naming Defendants and Ohio BWC. (Compl.) Against Defendants, Ms. Zimmerman brings four claims: (1) declaratory judgment regarding "which party owes what duties to Ms. Zimmerman pursuant to agreements among [Defendants]"; (2) negligence; (3) negligence per se; and (4) negligent entrustment, employment, retention, and repair. (*Id.* ¶¶ 60, 61–101.) Against Ohio BWC, she brings a declaratory judgment claim about the rights and obligations of Ohio BWC relative to her medical claim and lost employment payments. (*Id.* ¶¶ 105–06.) Last, against Doe Defendants, she alleges negligence and vicarious liability for negligent acts that caused her injuries. (*Id.* ¶ 111–12.)

Target removed the action to this Court under the Court's diversity jurisdiction and federal question jurisdiction. (ECF No. 1, ¶¶ 1, 3, 12–13.) Ohio BWC answered the Complaint and filed a counterclaim and crossclaim regarding payments made to Ms. Zimmerman, claiming that it "is entitled to reimbursement of its subrogation interest" to be recovered from Ms. Zimmerman and

3

Defendants, jointly and severally. (ECF No. 3, PageID 62–63.) Target filed a crossclaim against AFS, seeking declaratory judgment that AFS agreed to indemnify it. (ECF No. 10.)

RSS filed a Motion for Judgment on the Pleadings. (RSS Mot.) Ms. Zimmerman responded in opposition to the RSS Motion. (ECF No. 31.) RSS filed a reply. (ECF No. 33.) Target filed a Partial Motion for Summary Judgment. (Target Mot.) Ms. Zimmerman responded in opposition. (ECF No. 40.) And Target replied. (ECF No. 43.)

## ANALYSIS

### I. RSS's Motion for Judgment on the Pleadings

RSS moves for judgment on the pleadings, arguing (1) under Ohio law, it is entitled to workers' compensation immunity from Ms. Zimmerman's negligence claims, (2) to the extent Ms. Zimmerman alleges an employer intentional tort to sidestep RSS's workers' compensation immunity, that claim is barred by the applicable statute of limitations, and (3) the facts, as pled, fail to state a claim for relief for an employer intentional tort.

#### a. Legal Standard

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review for a Rule 12(c) motion for judgment on the pleadings is identical to the standard for a motion to dismiss under Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295–96 (6th Cir. 2008).

To state a claim upon which relief may be granted, plaintiffs must satisfy the pleading requirements set forth in Rule 8(a). Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

4

to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. (clarifying the plausibility standard from *Twombly*). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, '[the court is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 677–79 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

### b. Workers' Compensation Immunity for Negligence Claims

RSS argues that Ms. Zimmerman's negligence claims are barred under Ohio's workers' compensation immunity statute, Ohio Revised Code § 4123.74, because RSS complied with the requirements of Ohio Revised Code § 4123.35. (RSS Mot., PageID 199.) Section 4123.74 grants employers who comply with the workers' compensation program requirements of § 4123.35 immunity from "damages at common law or by statute for any injury . . . received . . . by any employee in the course of or arising out of his employment." Ohio Rev. Code § 4123.74.

In the prior lawsuit, the Court granted RSS's motion for judgment on the pleadings on this ground. *Zimmerman*, 2022 WL 4357489, at *3. In that case, Ms. Zimmerman argued that RSS was not protected from her negligence claims by workers' compensation immunity because she pled an employer intentional tort, which is not protected under the statute. *See id.* at *2; *Blankenship v. Cincinnati Milacron Chems., Inc.*, 433 N.E.2d 572, 577–78 (Ohio 1982) (recognizing that § 4123.74 does not protect employers against their employees' intentional tort claims). This Court rejected that argument, concluding Ms. Zimmerman had not sufficiently pled an employer intentional tort under Ohio law. *Zimmerman*, 2022 WL 4357489, at *3. Here, the Parties rehash

5

their arguments, with some slight differences.

### i. Statute of Limitations

RSS first argues that to the extent Ms. Zimmerman seeks to bring an intentional tort claim against RSS to sidestep RSS's workers' compensation immunity, the claim is barred by the two-year statute of limitations for bodily injury claims under Ohio Revised Code § 2305.10. (RSS Mot., PageID 201); *see Funk v. Rent-All Mart, Inc.*, 742 N.E.2d 127, 130 (Ohio 2001) (applying Ohio's two-year statute of limitations for bodily injury claims to international tort claims). Because the incident occurred on October 29, 2019, Ms. Zimmerman was required to bring her intentional tor claim by October 29, 2021. But Ms. Zimmerman argues her claim is not time-barred thanks to Ohio's Saving Statute, Ohio Revised Code § 2305.19. (ECF No. 31, PageID 244–46.)

"By its terms the Ohio Saving statute allows a plaintiff who voluntarily dismisses an action after the statute of limitations has run to refile the action within one year of the dismissal." *Fuller v. Cuyahoga Metro. Hous. Auth.*, 334 F. App'x 732, 737 (6th Cir. 2009) (citing Ohio Rev. Code § 2305.19). "The savings statute applies when the original suit and the new action are substantially the same." *Child.'s Hosp. v. Ohio Dep't of Pub. Welfare*, 433 N.E.2d 187, 189 (Ohio 1982). "A new complaint is substantially the same as the original complaint for purposes of the saving statute when the new complaint differs only to the extent that it adds new recovery theories based upon the same factual occurrences stated in the original complaint." *Stone v. N. Star Steel Co.*, 786 N.E.2d 508, 512 (Ohio Ct. App. Mar. 14, 2003) (citing *Lanthorn v. Cincinnati Ins.*, 2002-Ohio-6798, at ¶ 27 (Ohio Ct. App. Dec. 5, 2002)).

Ms. Zimmerman filed her original complaint on October 26, 2021, within the two-year limit, and the Court dismissed the case without prejudice on February 27, 2023, pursuant to Ms. Zimmerman's motion to dismiss. She had one year to refile her complaint after the dismissal, and

she did so on February 26, 2024. The only issue is whether the old action and the current action are substantially the same.

The differences between Ms. Zimmerman's original complaint and the present Complaint are minor—the two complaints allege the same basic factual occurrences. As to the attempted intentional tort claim, Ms. Zimmerman raised the same basic facts in both complaints. In the original complaint, she alleged that the defroster was "disconnected by the Defendants all together" and that, as a result, her windows fogged, and she could not see. (ECF No. 29-1, ¶¶ 34, 63.) In the present Complaint, she alleges that Defendants "disconnected the defroster" on the truck at the time of the collision. (Compl., ¶ 96.) These same facts form the basis of Ms. Zimmerman's employer intentional tort argument in both cases. And the other important facts, including the time, nature, and circumstances of the incident, and the defendants against whom the case is brought, are all essentially the same across the two complaints. Accordingly, Ohio's Saving Statute applies, and Ms. Zimmerman's attempt to raise an employer intentional tort claim for a second time is not time-barred.

### ii. Intentional Tort Liability

Under Ohio Revised Code § 2745.01, an employer can be held liable for intentional torts if "the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur." Ohio Rev. Code § 2745.01(A). The statute defines "substantially certain" to require an employer's "deliberate intent to cause an employee to suffer an injury." *Id.* § 2745.01(B). Thus, as this Court has held, "the General Assembly eliminated the 'substantially certain' path to employer intentional tort liability, as it was traditionally understood, and collapsed it into the 'intent to injure' path." *Encore Indus., Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:24-CV-875, 2025 WL 227154, at *5 (S.D. Ohio Jan. 17,

7

2025) (citing *Rudisill v. Ford Motor Co.*, 709 F.3d 595, 603 (6th Cir. 2013)). Ultimately, the statute always requires a showing that the employer deliberately intended to cause an injury. *See id.* (citing *Kaminski v. Metal & Wire Prods. Co.*, 927 N.E.2d 1066, 1079 (Ohio 2010); *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 927 N.E.2d 1092, 1099–1100 (Ohio 2010); *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 983 N.E.2d 1253, 1258 (Ohio 2012)).

Under the statute, the claimant can raise a rebuttable presumption of an employer's intent to injure by showing "[d]eliberate removal by an employer of an equipment safety guard." Ohio Rev. Code § 2745.01(C). As used in the statute, "'equipment safety guard' means 'a device that is designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment.'" *Hewitt v. L.E. Myers Co.*, 981 N.E.2d 795, 801 (Ohio 2012) (quoting *Fickle v. Conversion Technologies Int'l., Inc.*, 2011-Ohio-2960, ¶ 38 (Ohio Ct. App. 2011)). And "deliberate removal" refers to "a careful and thorough decision to get rid of or eliminate an equipment safety guard." *Id.* For example, "'deliberate removal' of an equipment safety guard occurs when an employer makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard from the machine." *Id.* at 801–02. This includes an employer's act of "bypassing or disabling the guard," but does not include "failure to train or instruct an employee on a safety procedure." *Id.* at 801.

Just like in her previous complaint, Ms. Zimmerman does not expressly bring a claim for an employer intentional tort under § 2745.01. She alleges two grounds for potential intentional tort liability in the negligence claim sections. First, she claims that Defendants "deliberately removed the defroster" on the truck by taking it off or otherwise eliminating it. (Compl., ¶ 64.) Specifically, she claims Defendants "disconnected the defroster" in the truck at the time of the collision. (*Id.* ¶ 96.) Second, she alleges that Defendants deliberately removed a safety feature of the steering wheel by adding a spinner knob to it. (*Id.* ¶ 66.)

8

1. **Defroster Device**

Ms. Zimmerman's claim of an employer intentional tort regarding RSS's alleged deliberate removal of the defroster fails as a matter of law for several reasons. First, under Ohio law, the defroster device does not meet the definition of an "equipment safety guard" required to raise a rebuttable presumption of the employer's intent to injure. Ohio Rev. Code § 2745.01(C). Plexiglass shields on a drill tap machine do not meet the definition of an "equipment safety guard" because the shields merely serve a "general safety purpose" "to keep errant chips from flying into the machine operator." *Cruz v. W.*, No. 109140, 2020 WL 6342652, at *1, 3 (Ohio Ct. App. Oct. 29, 2020). Similarly, a forklift backup alarm does not meet the definition of an equipment safety guard because it merely alerts a nearby employee to danger, rather than physically keeping him away from the danger. *Turner v. Dimex, LLC*, 147 N.E.3d 35, 43 (Ohio Ct. App. 2019). Additionally, a clevis shackle used to hold sling cables in a crane hook is not an equipment safety guard because, even though its "purpose is to make rigging under certain conditions safer, such purpose does not make the device a safety equipment guard, only arguably a safety-related device." *Breitenbach v. Double Z Constr. Co., LLC*, 63 N.E.3d 498, 506 (Ohio Ct. App. 2016).

The window defroster's function is to clear up the view of the driver. In that way, like the plexiglass shields in *Cruz*, it merely serves a "general safety purpose" rather than serving as an equipment safety guard. *See Cruz* at *3 (Ohio Ct. App. Oct. 29, 2020) ("[T]he mere fact that a device might serve some general safety purpose is insufficient to conclude that the device is an equipment safety guard for purposes of R.C. 2745.01.") Just like the backup alarm in *Turner*, the defroster allows the driver to see danger, rather than physically diverting her away from it. *Turner* at 43. Similarly, like the clevis shackle in *Breitenbach*, the defroster is only "a safety-related device" rather than an equipment safety guard. *Breitenbach* at 506.

9

Last, Ms. Zimmerman's argument is not saved by her contention that the lack of a functional defroster violates federal regulations. (*See* Compl., ¶ 35); *Juhn v. Ford Motor Co.*, No. 1:10CV348, 2011 WL 13234643, at *4 (N.D. Ohio Jan. 7, 2011) ("Regardless of whether or not [the employer] violated safety regulations, the plain language of 2745.01(C) requires the removal of safety equipment guards."); *see also Cruz*, 2020 WL 6342652, at *3 (holding that "OSHA violations should not be used to analyze employer liability under R.C. 2745.01.").

Ultimately, then, a window defroster is not meant "to shield the operator from exposure to or injury by a dangerous aspect of the equipment" and is not an "equipment safety guard" under Ohio Revised Code § 2745.01(C). *Hewitt*, 981 N.E.2d at 801; *see also Hewitt* at 802 (holding that the interpretation of "equipment safety guard" in the context of § 2745.01(C) is a question of law for the court).

Second, even if the defroster device meets the definition of an "equipment safety guard" under Ohio law, Ms. Zimmerman has not alleged facts sufficient to infer that RSS "deliberate[ly] remov[ed]" the defroster device. Although she alleges that RSS, and the other Defendants, "disconnected the defroster," she does not allege that the alleged disconnection resulted from "a careful and thorough decision to get rid of or eliminate an equipment safety guard." (Compl., ¶ 96); *Hewitt*, 981 N.E.2d at 801.

Furthermore, Ms. Zimmerman's factual account of the incident contradicts the idea that the device was deliberately disconnected. She alleges that when employees submit work orders for truck issues, an AFS worker responds and addresses those problems. (Compl., ¶ 45.) She claims that an AFS worker inspected the truck and told her she did not know how to use the defroster. (*Id.* ¶ 47.) By reasonable inference, Ms. Zimmerman submitted a ticket and an AFS worker inspected the device and found no problems. Even construing the alleged facts in her favor, Ms. Zimmerman

does not "plausibly" establish that RSS knowingly disconnected the defroster in her truck as part of its deliberate removal an equipment safety guard.

Third, Ms. Zimmerman does not allege that RSS, nor any of the other Defendants, acted with the deliberate intent to injure her. Therefore, even if the facts, as alleged, were sufficient to raise a rebuttable presumption of intent to injure under the employer intentional tort statute, Ohio Revised Code § 2745.01(C), her Complaint does not allege the ultimate requirement that the employer acted with deliberate intent to injure her. *See Encore*, 2025 WL 227154, at *5.

For all these reasons, Ms. Zimmerman has failed to state a claim for an employer intentional tort under Ohio Revised Code § 2745.01 regarding the defroster device.

2. **Spinner Knob**

Ms. Zimmerman also argues she has sufficiently pled an employer intentional tort regarding the Defendants' installation of the spinner knob on the steering wheel. (ECF No. 31, PageID 248.) She claims that the steering wheel, without the presence of a spinner knob, is an "equipment safety guard" that Defendants deliberately removed. (*Id.*) But an unmodified steering wheel is, at most, arguably a safety-related device under Ohio law. The addition of the knob does not constitute the "removal" or "bypass" of an equipment safety guard, and Ohio courts do not consider something as basic as a steering wheel to be an equipment safety guard under the above-cited authority. Regardless, Ms. Zimmerman does not allege that RSS installed the knob with the intent to injure her. Accordingly, Ms. Zimmerman has failed to state a claim for an employer intentional tort under Ohio Revised Code § 2745.01 regarding the spinner knob.

Ultimately, Ms. Zimmerman does not sufficiently plead an employer intentional tort to survive RSS's Motion for Judgment on the Pleadings. Therefore, as this Court held in Ms. Zimmerman's previous case, RSS's workers' compensation immunity under Ohio Revised Code

11

§ 4123.74 applies to Ms. Zimmerman's negligence claims against it. Those claims against RSS (negligence, negligence per se, and negligent entrustment) are **DISMISSED WITH PREJUDICE**.

### c. Declaratory Judgment Claim

Ms. Zimmerman's first claim for declaratory judgment (count one) relates to RSS's duties to indemnify Target, AFS, and Doe Defendants and other rights and duties of Defendants "under agreements among each other." (Compl., ¶ 58–59.) She alleges that RSS "agreed to indemnify, defend, and/or hold Does, Target, and/or AFS harmless in relation to the operation, repair, or maintenance" of the truck. (Compl., ¶ 59.) Her requested relief is generalized: she asks the Court to issue declaratory judgment in her favor "and against [Defendants] related to the operation, repair, or maintenance of [the truck] at the Property and which party owes what duties to Ms. Zimmerman under the related contracts." (Compl., PageID 58.)

Although RSS does not make any arguments about Ms. Zimmerman's declaratory judgment claim against it in its Motion for Judgment on the Pleadings, Ms. Zimmerman preemptively defends the claim in her Response, arguing that the declaratory relief requested "is not expressly barred by" the Ohio workers' compensation immunity statute, Ohio Revised Code § 4123.74. (ECF No. 31, PageID 243–44.) In response, RSS argues that the Court should dismiss the claim because, among other reasons, Ms. Zimmerman lacks standing to bring the declaratory judgment claim against it. (ECF No. 33, PageID 256.)

Under the Declaratory Judgment Act, 28 U.S.C. § 2201,

In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

A district court's decision to exercise jurisdiction under the § 2201 is discretionary. *Wilton*

*v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

RSS contends that Ms. Zimmerman lacks standing to seek a declaratory judgment regarding its alleged indemnification duty because she is not an "interested party" under § 2201. (ECF No. 33, PageID 256.) It argues Ms. Zimmerman has not pled that she was a party to any contract between RSS and the other Defendants. (*Id.*) Thus, RSS contends, whether RSS agreed to indemnify the other Defendants is a matter to be resolved between those parties, not Ms. Zimmerman. (*Id.*)

"When a party sues for declaratory relief, 'he must satisfy the prerequisites of the Declaratory Judgment Act and Article III's standing baseline.'" *Safety Specialty Ins. v. Genesee Cnty. Bd. of Commissioners*, 53 F.4th 1014, 1021 (6th Cir. 2022) (quoting *Saginaw County v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020)). To have standing under Article III of the United States Constitution, a declaratory judgment claimant must plausibly allege facts showing "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *STAT Emergency* at 954 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

The U.S. Supreme Court has held that where an insurer sues an insured and an injured third party for a declaration of noncoverage, the insurance company has standing to sue the injured party because a real "controversy" exists between the injured third party and the insurer. *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273–74 (1941). But the posture here differs, because, unlike in *Maryland Casualty*, the injured third party (Ms. Zimmerman), rather than RSS, seeks a declaratory judgment against RSS regarding its indemnification obligations to the other Defendants. Also unlike in *Maryland Casualty*, none of the Defendants has asserted a right to indemnification against RSS. As a result, no controversy yet exists between RSS and the other

Defendants regarding its indemnification obligations. *See Genesee Cnty. Bd. of Commissioners*, 53 F.4th at 1022–23 (holding that *Maryland Casualty* did not control, in part because "the possibility that [the insureds] might look to [the insurer] for indemnification is more attenuated than it was for the parties in *Maryland Casualty*.") Thus, *Maryland Casualty* does not control here.

Furthermore, the indemnification question is not ripe for decision. Courts in this Circuit consider several factors when deciding whether an issue is ripe for review, including the hardship imposed for refusing to the consider the claimant's prospective claims, the likelihood that the harm alleged would ever come to pass, and "whether the factual record of this case is sufficiently developed to produce a fair and complete hearing as to the prospective claims." *United Steelworkers of Am., Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 195 (6th Cir. 1988).

Of course, the dispute between Ms. Zimmerman and the Defendants is still pending. No liability has been determined, and no damages have been assessed. Even if liability and damages against one or more of the Defendants results, the liable defendant could then ask RSS for indemnification, and RSS would have the opportunity to accept or refuse to indemnify. *See Safety Specialty* at 1022. If RSS then refused, the controversy would likely be ripe. But at this early stage, the risk of hardship and harm to Ms. Zimmerman from refusing to consider her declaratory judgment claim is attenuated and low, because RSS has not yet refused to indemnify. Furthermore, the factual record is underdeveloped and poorly situated to support a fair adjudication on the merits. Ms. Zimmerman failed to plead any contractual language regarding RSS's indemnification obligations of which she claims to be a beneficiary. If an indemnification dispute arises, the Court will be much better positioned to fairly adjudicate the matter when the relevant parties present evidence of the applicable contracts. But the record and dispute does not support such an inquiry based on Ms. Zimmerman's tenuous declaratory judgment claim.

14

Accordingly, the Court finds that Ms. Zimmerman lacks standing to bring the declaratory judgment claim about RSS's indemnification obligations to other Defendants and finds that the matter is not ripe for review. For the same reasons, to the extent Ms. Zimmerman seeks a declaration of other rights and duties owed between the parties under her first claim, Ms. Zimmerman lacks standing, and the controversy is unripe. The Court thus **GRANTS** RSS's Motion for Judgment on the Pleadings. (ECF No. 29.) Ms. Zimmerman's declaratory judgment claim (count one) is **DISMISSED WITHOUT PREJUDICE**.

## II. Target's Partial Motion for Summary Judgment

Target moves for summary judgment on the sole ground that Ms. Zimmerman's claims against it are not substantially similar and thus are not subject to Ohio's Saving Statute, Ohio Revised Code § 2305.19, meaning the claims are time-barred. (Target Mot., PageID 310.) Ms. Zimmerman brings three negligence claims and one declaratory judgment claim against Target. As decided above, Ms. Zimmerman's declaratory judgment claim is dismissed because she lacks standing and the claim is unripe.

As this Court decided earlier in this Opinion and Order regarding Ms. Zimmerman's second attempt to raise an employer intentional tort claim, the original complaint and the current Complaint allege the same basic factual circumstances. (*See supra*, Section I(b)(i).) The same analysis applies to Ms. Zimmerman's negligence claims because the same basic facts form the basis of those claims. Accordingly, Ohio's Saving Statute applies regarding Ms. Zimmerman's negligence, negligence per se, and negligent entrustment claims brought against Target in the current action. Those claims thus are not time-barred under the two-year statute of limitations for the same reasons discussed above.

This Court also determined above that RSS's workers' compensation immunity applied

15

regarding Ms. Zimmerman's negligence claims against it, resulting in dismissal of Ms. Zimmerman's negligence claims against RSS. (*See supra*, Section I(b)(ii).) But Target asserts no such immunity grounds in its Motion for Summary Judgment. Therefore, the Court **DENIES** Target's Partial Motion for Summary Judgment.

### III. Doe Defendants

To date, Ms. Zimmerman has not moved to amend her pleadings to substitute the real names of the Doe Defendants and has not effected service on them as required by Rule 4(m) of the Federal Rules of Civil Procedure. Rule 4(m) provides, in part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Further, a plaintiff is required to "name all the parties" in the Complaint. Fed. R. Civ. P. 10(a). Although the use of pseudonyms is permissible where the party requires discovery to ascertain the identify of unnamed defendants, the complaint must be amended to reflect those discovered identities, and service over those named parties must occur within Rule 4(m)'s 90-day window. *See Petty v. Cty. of Franklin*, 478 F.3d 341, 345–36 (6th Cir. 2007). The Court's deadline to move to amend and to move for joinder of parties was July 1, 2024. (ECF No. 24.)

Because Ms. Zimmerman has failed to timely substitute the Doe Defendants' real names and effect service over them, the Court **ORDERS** Ms. Zimmerman to **SHOW CAUSE** within 14 days of this Opinion and Order regarding why the Court should not dismiss her claims against Doe Defendants for failure to effect service. Alternatively, Ms. Zimmerman may consent to dismissal of the claims against Doe Defendants. She must support any good cause showing with sworn affidavits or unsworn declarations in compliance with 28 U.S.C. § 1746.

## CONCLUSION

The Court **GRANTS** RSS's Motion for Judgment on the Pleadings (ECF No. 29) and **DENIES** Target's Motion for Summary Judgment (ECF No. 39). The Court **DISMISSES WITH PREJUDICE** Ms. Zimmerman's negligence, negligence per se, and negligent entrustment claims against RSS. The Court **DISMISSES WITHOUT PREJUDICE** Ms. Zimmerman's declaratory judgment claim (count one) against all Defendants. The Court **ORDERS** Ms. Zimmerman to **SHOW CAUSE** within 14 days of this Opinion and Order regarding why the Court should not dismiss her claims against John/Jane Doe #1–25 for failure to effect service.

This case remains open.

**IT IS SO ORDERED.**

**2/19/2025**                                                **s/Edmund A. Sargus, Jr.**
**DATE**                                                         **EDMUND A. SARGUS, JR.**
                                                                             **UNITED STATES DISTRICT JUDGE**